IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ESTEFANY MARIA RODRIGUEZ FLOREZ,<br><br>        Petitioner,<br><br>        v.<br><br>Scott LADWIG, Field Office Director of Enforcement and Removal Operations, New Orleans Field Office, Immigration and Customs Enforcement; Kristi NOEM, Secretary, U.S. Department of Homeland Security; DEPARTMENT OF HOMELAND SECURITY; ICE ENFORCEMENT & REMOVAL OPERATIONS, Nashville Field Office.<br><br>        Respondent. | **Case No. 3:26-cv-00247**<br>**Judge Richardson** |

## FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS

    Pursuant to 28 U.S.C. § 2241, petitioner Estefany Maria Rodriguez Florez (Rodriguez) asks the Court to issue a Writ of Habeas Corpus requiring Respondents to immediately release her because immigration agents have seized and detained her in violation of the First, Fourth, and Fifth Amendments.

    Petitioner Rodriguez is a journalist who works for *Nashville Noticias*, a Spanish-language media outlet in Nashville. In recent months, she has frequently reported stories on ICE, including many critical of ICE. In response, ICE has summarily detained her in a warrantless arrest and has denied her release even though she has done everything possible to comply with immigration law

1

while seeking political asylum and despite every possible factor weighing in favor of her release. ICE's arbitrary actions serve to punish her for her public criticism of ICE.

## JURISDICTION

1. Petitioner Rodriguez is in the physical custody of Respondents, as she remains in immigration custody. At the time of the filing of the initial petition, Petitioner was in the physical custody of the Respondents ICE Enforcement & Removal Operations Nashville Field Office, so this Court has jurisdiction. *Rumsfield v. Padilla*, 542 U.S. 426 (2004). Even though Petitioner was moved from this District after the filing of the petition, this Court retains jurisdiction. *Ex parte Endo*, 323 U.S. 283, 305–06 (1944).

2. This Court has jurisdiction under 28 U.S.C. § 2241(c)(5) (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause).

3. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

4. Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493–500 (1973), venue lies in the United States District Court for the Middle District of Tennessee, the judicial district in which Petitioner was taken into custody and detained. Regardless of where Petitioner is detained as her case progresses, venue lies here because, in this District, the Petitioner was seized by ICE, has long resided, and has legal counsel, whereas Petitioner has no connection to any other district. *See So v. Reno*, 251 F. Supp. 2d 1112, 1127 (E.D.N.Y. 2003).

5. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a

substantial part of the events or omissions giving rise to the claims occurred in the Middle District of Tennessee.

## REQUIREMENTS OF 28 U.S.C. § 2243

6. Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963).

7. Pursuant to 28 U.S.C. § 2243, the Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. *Id.* After issuance of an order to show cause, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* Upon filing of the return, the Court sets a hearing "not more than five days after the return unless for good cause additional time is allowed." *Id.* Finally, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." *Id.*

## PARTIES

8. Petitioner Rodriguez is a citizen of Colombia who has been in immigration detention since the morning of March 4, 2026. Petitioner has continuously resided in the United States for five years, and currently resides in the Middle District of Tennessee.

9. Respondent Scott Ladwig is the Director of the New Orleans Field Office of ICE's Enforcement and Removal Operations division. As such, Ladwig is Petitioner's immediate custodian and is responsible for Petitioner's detention and removal. He is named in his official capacity.

10. Respondent Kristi Noem is the Secretary of the Department of Homeland Security. She is responsible for the implementation and enforcement of the Immigration and

Nationality Act (INA), and oversees ICE, which is responsible for Petitioner's detention. Ms. Noem has ultimate custodial authority over Petitioner and is sued in her official capacity.

11. Respondent Department of Homeland Security (DHS) is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

12. Respondent ICE Enforcement & Removal Operations (ERO) in Nashville, Tennessee likewise has immediate physical custody of Petitioner while in this District.

## FACTS

13. Rodriguez was born in Colombia in 1990. She worked as a journalist in Colombia and faced persecution for her work. In March 2021, she lawfully entered the United States on a tourist visa. (I-213, R.9-2, PageID# 47.)

14. In July 2021, Rodriguez applied for political asylum by submitting an I-589 application to the United States Citizenship and Immigration Services (USCIS), which handles affirmative applications for immigration status and benefits. (*Id.*)

15. In September 2021, her I-94 expired. (*Id.*) Because USCIS still had not adjudicated her asylum application, her options were limited. As her asylum application itself reflected, she would face persecution if she returned to Colombia. Nor could she go to a third country without advanced parole because leaving the United States would constitute abandonment of her asylum application. 8 C.F.R. § 208.8(a). Rodriguez remained in the United States.

16. In February 2022, USCIS issued her a work permit. (I-213, R.9-2, PageID# 47.) At all times, she has maintained the required contact with USCIS. She worked as a journalist for

4

*Nashville Noticias*, raised her child, followed all directions from USCIS, maintained a completely clean criminal record, and waited for adjudication of her asylum application.

17. In 2025, the Trump administration engaged in aggressive immigration enforcement tactics across the United States. It also attacked journalists covering ICE's enforcement activities. (Ex. 1, Society of Professional Journalists, *SPJ condemns attacks on journalists covering ICE activity* (Oct. 2, 2025) (detailing physical attacks by ICE agents on journalists); Ex. 2, Reporters without Borders, *Attacks on journalists in Minnesota cap Trump's first year back in office* (Jan. 20, 2026).)

18. These developments made 2025 a risky time for a journalist to cover ICE arrests, but that is exactly what *Nashville Noticias*, a Spanish-language news outlet, did. It reported on ICE practices and abusive actions that might otherwise go unreported.

19. Petitioner Rodriguez herself started covering ICE arrests with regularity starting in November 2025. Her stories were critical of ICE's practices and revealed how they impacted Nashville's immigrant community.[1]

---

[1] *See, e.g.*, Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Nov. 20, 2025), https://www.instagram.com/p/DRS4n6JES_s/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Nov. 26, 2025), https://www.instagram.com/p/DRicpuAEUIE/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Dec. 3, 2025), https://www.instagram.com/p/DR049hxjOTt/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Dec. 8, 2025), https://www.instagram.com/p/DSAtRexjzuq/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Dec. 8, 2025), https://www.instagram.com/p/DSBTRv1kd5n/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Dec. 10, 2025), https://www.instagram.com/p/DSGVimekYwI/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Dec. 12, 2025), https://www.instagram.com/p/DSLdGNpEm6s/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Dec. 15, 2025), https://www.instagram.com/p/DSTRuqnERRt/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Dec. 16, 2025), https://www.instagram.com/p/DSV0sgAkUYd/; Nashville Noticias & Estefany Rodriguez

20. In early January 2026, ICE sent a G-56 letter to Rodriguez asking her to "[p]lease come to the ICE field office" on January 26, 2026, for "processing and additional information" and to "help ensure the best outcome for [her] case." (Immigration Records, R.1-1, PageID# 9.) The letter stated ICE's intention to issue a Notice to Appear (NTA), which is the charging

---

(@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Dec. 16, 2025), https://www.instagram.com/p/DSWfJV5DJzx/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Jan. 2, 2026), https://www.instagram.com/p/DTBHm1-EZm0/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Jan. 7, 2026), https://www.instagram.com/p/DTOaJE-EijM/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Jan. 12, 2026), https://www.instagram.com/p/DTbYYxGkeyj/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Jan. 14, 2026), https://www.instagram.com/p/DThA6IDjBff/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Feb. 10, 2026), https://www.instagram.com/p/DUmdFLnjDJn/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Feb. 16, 2026), https://www.instagram.com/p/DU1qE8yjDEs/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Feb. 17, 2026), https://www.instagram.com/p/DU20P1_EbTy/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Feb. 18, 2026), https://www.instagram.com/p/DU51FCvDjQr/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Feb. 18, 2026), https://www.instagram.com/p/DU561h7jgD6/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Feb. 19, 2026), https://www.instagram.com/p/DU9NFmHEcH7/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Feb. 20, 2026), https://www.instagram.com/p/DU_EoDSEfwC/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Feb. 20, 2026), https://www.instagram.com/p/DVAb4RYjMpn/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Feb. 23, 2026), https://www.instagram.com/p/DVHu7qxEfMq/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Feb. 24, 2026), https://www.instagram.com/p/DVKJZYuET-J/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Feb. 24, 2026), https://www.instagram.com/p/DVKYZqzjJ1R/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Mar. 3, 2026), https://www.instagram.com/p/DVZxUnLjBrS/; Nashville Noticias & Estefany Rodriguez (@nashvillenoticias & @estefany_rodriguezperiodista), Instagram (Mar. 4, 2026), https://www.instagram.com/p/DVcT40wkadH/. Screenshots from each of these posts—translated into English using Instragram's automatic translation feature—have been appended to this pleading for the Court's reference, with unrelated personal identifying information removed. *See* Ex. 3.

document that initiates removal proceedings in immigration court. (*Id.*) It did not claim she was legally required to appear. (*Id.*)

21. Such a meeting, albeit consensual, could be consequential. ICE might do any of the following. It could follow through on its stated intention to issue an NTA, while also making an initial custody determination to detain her and send her to a far-away detention center for the removal proceedings. On the other hand, ICE might simply issue the NTA and determine she should *not* be detained pending proceedings. Or ICE might decline to issue an NTA and simply require her to check-in at the ICE field office periodically, essentially as a way of confirming she was not abandoning her affirmative asylum application through UCSIS.

22. Rodriguez and her fiancé, with whom she was living, had previously planned their wedding for January 21. They married on that date, and, through their immigration lawyer Joel Coxander, sought to petition for residency status through that marriage. Because she had lawfully entered the United States on a visa, and because she had no record of criminal or otherwise wrongful activity, her marriage-based pathway to residency appeared certain, although it would be adjudicated only by USCIS, not in immigration court.

23. On January 26, a massive winter storm closed the ICE field office as well as virtually all of Nashville, and consequently Rodriguez had no appointment that day.

24. When an ICE field office is unexpectedly closed, it typically reschedules all appointments for the day it was closed or provides some notice of when those with appointments should next report to ICE. That happened here. Rodriguez soon received a second G-56 letter, dated February 10, 2026, asking her to come to the office on Wednesday, February 25, 2026. (Records, R.1-1, PageID# 10.)

7

25. On Monday, February 23, 2026, Rodriguez's husband, accompanied by attorney Caleb Mundy, who was acting as Coxander's agent, went to the ICE field office to ask what to expect on February 25 and to ask if ICE would, rather than having the meeting, simply mail an NTA to Coxander or give it to Mundy, if ICE did in fact intend to issue an NTA.[2] But the ICE agent could not find Rodriguez in their computer system for appointments and could find no sign of an appointment for her on February 25. Multiple agents reviewed the situation. The ICE agent stated that she would instead report at a later date to resolve the situation. Finally, the agent gave Mundy an I-220B page 2 ("Order of Supervision (Continuation Page)") that stated Rodriguez's report date was March 17, 2026. (Records, R.1-1, PageID# 11; I-213, R.9-2, PageID# 48.) Prior to receiving this notice, Coxander and Rodriguez had fully intended to appear at the ICE ERO office on February 25, 2026, as requested, and, if necessary, to present extensive evidence confirming that it would be unreasonable to take her into custody.

26. In light of the new notice, Coxander and Rodriguez planned to appear at the ICE ERO office on March 17, 2026. But on the morning of March 4, 2026, Rodriguez was stopped by an ICE agent who summarily detained and arrested her in a targeted arrest when she and her husband parked their vehicle, which was emblazoned with the *Nashville Noticias* logo.

27. When an ICE agent encounters someone in the field whom he reasonably believes to be removable, the agent cannot arrest that person without a warrant unless the agent has reason to believe the person "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2).

---

[2] If ICE did decide to issue an NTA and thereby put Rodriguez in removal proceedings, she would join approximately 2.3 million people waiting for a hearing or ruling on an asylum application pending in immigration court. Transactional Records Access Clearinghouse, *Immigration Court Quick Facts* (reporting figures from the end of December 2025), available at https://tracreports.org/immigration/quickfacts/eoir.html (last visited Mar. 8, 2026).

28. According to Rodriguez, ICE did not show her any documents before being transported to the ICE field office. Nor did anything happen to make her appear to be a flight risk. In fact, she was not even arguably a flight risk because: she had entered the United States lawfully on a visa; she had timely applied for asylum; she had obtained a work permit; she had maintained contact with USCIS; she had married a U.S. citizen and had applied for marriage-based status; she was employed; she had no criminal record; she had a child; she had firm ties to the Nashville community; and, with legal counsel, she had proactively attempted to come to the ICE field office at the proper time for a consensual meeting.

29. The ICE agents who encountered Rodriguez and took her into custody did so without in fact executing any warrant and without having any basis to believe she might present a flight risk. They then took her, under custody, to the ICE field office.

30. When interacting with an ICE agent, Rodriguez could see that an agent had, in his cellular phone, a photograph of her *Nashville Noticias* vehicle.

31. While Rodriguez was still in transit to the ICE field office, attorney Coxander spoke by telephone with an ICE supervisor at the field office. He explained that they had been directed to come to the ICE field office on March 17, and had proactively tried, on February 23, to comply with ICE's request for a consensual meeting. Coxander's agent Mundy then appeared at the ICE field office and provided a hard copy of the I-220B page 2 with the March 17th report date and explained the February 23rd meeting to a supervisor, with an ICE officer from the February 23rd meeting present. ICE's own records show that it acknowledged that on February 23, its agents had ultimately "g[iven] her a new report date of March 17, 2026." (I-213, R.9-2, PageID# 48.)

32. At the ICE field office, certain decisions had to be made about Rodriguez. Under the governing regulations, after an ICE agent has made a warrantless arrest in the field, an ICE "examining officer," who is distinct from the "arresting officer," must promptly examine the arrested person. 8 C.F.R. § 287.3(a). After that examination, the examining officer either issues an NTA or takes "whatever other action might be appropriate." 8 C.F.R. § 287.3(b). The examining officer also makes a "determination . . . whether the [noncitizen] will be continued in custody or released on bond or recognizance and whether a notice to appear and warrant of arrest . . . will be issued." 8 C.F.R. § 287.3(d).

33. Despite all the foregoing facts favoring release on bond or recognizance, and knowing full well that Rodriguez had been trying to comply with ICE's request to appear for a consensual meeting, the ICE agent issued a warrant of arrest and determined Rodriguez should remain in custody.

34. Later that day, after the filing of the initial Petition, ICE transported Rodriguez to a transit jail in Etowah, Alabama. As of today, March 8, 2026, Rodriguez remains in custody that transit jail.

## CLAIMS FOR RELIEF

### I. VIOLATION OF THE FOURTH AMENDMENT

35. Petitioner incorporates by reference the factual allegations and legal arguments set forth in the preceding paragraphs.

36. The Fourth Amendment is violated when an individual is unlawfully seized. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). An arrest or detention constitutes a seizure. *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011).

37. It is unlawful for an immigration authority to make a warrantless arrest of a noncitizen who is already present in the United States absent a "reason to believe" not only that the individual "in is in the United States in violation of" an immigration law or regulation, but also that the individual "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); *see Morales v. Chadbourne*, 793 F.3d 208, 216 (1st Cir. 2015) ("Courts have consistently held that the 'reason to believe' phrase in § 1357 'must be read in light of constitutional standards, so that "reason to believe" must be considered the equivalent of probable cause.'" (quoting *Au Yi Lau v. INS*, 445 F.2d 217, 222 (D.C. Cir. 1971))).

38. Immigration authorities evidently arrested Petitioner without a warrant. They certainly lacked any basis for deciding she was likely to escape before a warrant could be obtained because she entered the United States lawfully, timely applied for political asylum, also applied for status through her U.S. citizen husband, and was actively trying, with the assistance of a lawyer, to comply with their requests to come to the ICE ERO office. *See Rosada v. Figueroa*, No. CV 25-02157, 2025 U.S. Dist. LEXIS 156344, at *52 (D. Ariz. Aug. 11, 2025) (Rep. & Recommendation) (finding that noncitizen's warrantless arrest violated the Fourth Amendment, and recognizing that her long residence at liberty in the country and her compliance with immigration authorities weighed against the conclusion she was likely to escape), *adopted by* 2025 U.S. 156336, at *3 (D. Ariz. Aug. 13, 2025); *Martinez-Angosto v. Mason*, 344 F.2d 673, 680 (2d Cir. 1965) ("There was no risk of Martinez-Angosto escaping during the time needed to get a warrant . . . ."). Thus, her warrantless arrest was unlawful, and her "release from detention should be granted because her Fourth Amendment rights were violated." *Rosada*, 2025 U.S. Dist. LEXIS 156344, at *53.

## II. VIOLATION OF THE FIRST AMENDMENT

39. Petitioner incorporates by reference the factual allegations and legal arguments set forth in the preceding paragraphs.

40. The First Amendment to the U.S. Constitution provides in part that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. Amend. I. The First Amendment protects past, present, and future speech, including speech by noncitizens. *Bridges v. Wixon*, 326 U.S. 135, 148 (1945); *Rafeedie v. I.N.S.*, 795 F. Supp. 13, 22 (D.D.C. 1992) ("It has long been settled that aliens within the United States enjoy the protection of the First Amendment . . . .").

41. The Respondents' arrest and ongoing detention of Rodriguez violate the First Amendment because they: (a) retaliate against and punish Rodriguez's past protected speech, which was "speech on public issues,"[3] (b) prevent her from speaking now (through detention); (c) attempt to chill (through past punishment and ongoing threat) her future speech in the United States; (d) deprive those with whom she would speak of her present and future speech on matters of public concern; and, (e) chill other journalists who report on or criticize ICE and its practices. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("The law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out."); *Bello-Reyes v. Gaynor*, 985 F.3d 696, 698 (9th Cir. 2021); *Rigbir*

---

[3] *Connick v. Myers*, 461 U.S. 138, 145 (1983) ("[S]peech on public issues occupies the 'highest rung of the hierarchy of First Amendment values' and is entitled to special protection." (quoting *NAACP v. Caliborne Hardware Co.*, 458 U.S. 886, 913 (1982))); *see Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) ("When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant. Viewpoint discrimination is thus an egregious form of content discrimination." (citing *R. A. V. v. St. Paul*, 505 U.S. 377, 391 (1992)) (citation omitted)).

*v. Homan*, 923 F.3d 53, 70 (2d Cir. 2019), *cert. granted, remanded, and vacated sub nom. on other grounds, Pham v. Ragbir*, 141 S. Ct. 227 (2020); *Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 921 (W.D. Tex. 2018).

42. These speech-related consequences are not side effects of an action with some other purpose; they are, instead, the purpose of the government's actions as to Rodriguez, which are intended to silence viewpoints with which the Trump Administration disagrees.

### III. VIOLATION OF THE FIFTH AMENDMENT

43. Petitioner incorporates by reference the factual allegations and legal arguments set forth in the preceding paragraphs.

44. The Constitution establishes due process rights for "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

45. The government's detention of Rodriguez is unjustified. The government has not demonstrated that Rodriguez—who has no criminal history, close ties to the Nashville community, and a strong track record of compliance with USCIS—needs to be detained. *See Zadvydas*, 533 U.S. at 690 (finding immigration detention must further the twin goals of (1) ensuring the noncitizen's appearance during removal proceedings and (2) preventing danger to the community). There is no credible argument that Rodriguez cannot be safely released back to her community.

46. Rodriguez's detention is also punitive and bears no "reasonable relation" to any legitimate purpose for detaining her. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972) ("At the least, due process requires that the nature and duration of [civil confinement] bear some reasonable relation to the purpose for which the individual is committed."); *Zadvydas*, 533 U.S. at 690

13

(finding immigration detention is civil and thus ostensibly "nonpunitive in purpose and effect"). Her "detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Demore v. Kim*, 538 U.S. 510, 532–33 (2003) (Kennedy, J., concurring).

47. Rodriguez's arrest and detention violate due process limitations on civil detention because they are designed to punish and silence her speech with which the government disagrees, and to chill others from expressing these viewpoints, which are impermissible bases for taking away individual liberty.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

    a.    Assume jurisdiction over this matter;

    b.    Issue a Writ of Habeas Corpus requiring that Respondents release Petitioner;

    c.    Declare that Respondents' actions to arrest and detain Petitioner violate the First Amendment, the Fourth Amendment, and the Due Process Clause of the Fifth Amendment;

    d.    Enjoin Respondents from taking any enforcement action against Petitioner to retaliate against her past speech or to chill her future speech;

    e.    Award Petitioner attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

    f.    Grant any other and further relief that this Court deems just and proper.

Respectfully submitted,

*/s/ Michael C. Holley*
Michael C. Holley
Julio Colby
TENNESSEE IMMIGRANT & REFUGEE RIGHTS COALITION
3310 Ezell Road
Nashville, TN 37211
Phone: (615) 457-4768
mike@tnimmigrant.org
mholley@holleylegal.com
julio@tnimmigrant.org

*/s/ Joel Coxander*
Joel Coxander
MIRA Legal
486 Bell Road, Suite B
Nashville, TN 37217

Counsel for Petitioner

# CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2026, I electronically filed this pleading with the U.S. District Court Clerk by using the CM/ECF system to Assistant United States Attorney Mercedes C. Maynor, United States Attorney's Office, 719 Church St., Suite 3300, Nashville TN 37203.

s/ *Michael C. Holley*
MICHAEL C. HOLLEY