# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| ESTEFANY MARIA RODRIGUEZ FLOREZ,<br><br>       Petitioner,<br><br>       v.<br><br>CHRISTOPHER BULLOCK, Field Office Director of Enforcement and Removal Operations, New Orleans Field Office, Immigration and Customs Enforcement.<br><br>       Respondent. | Case No. 3:26-cv-00247<br>Judge Richardson |

## PETITIONER'S RESPONSE TO MOTION TO DISMISS
## UNDER RULES 12(b)(1) AND 12(b)(6), AND BRIEFING ON OTHER ISSUES

Petitioner Estefany Maria Rodriguez Florez (Rodriguez) submits this pleading to respond to the Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) and to address the interrelated issues raised by the Court regarding mootness and the custody requirement.

Pursuant to Rule 12(b)(1), the Respondent argues that Rodriguez lacks standing, that her case is now moot, and that 8 U.S.C. § 1252(g) strips this Court of jurisdiction. Pursuant to Rule 12(b)(6), he argues that her claims are not plausible because they are allegedly moot and barred by § 1252(g). (Resp. Mem. in Support of Mot. to Dismiss, R.26, PageID# 203, 210–11.) At the show cause hearing, this Court asked Rodriguez to brief questions regarding mootness and the "custody" requirement under 28 U.S.C. § 2241 as it relate to mootness. Here, Rodriguez addresses all these matters, first addressing the questions relevant to a Rule 12(b)(1) motions—custody, standing, mootness, and the applicability of § 1252(g)—and second addressing the Rule 12(b)(6) motion, which is largely, if not completely, redundant of the Rule 12(b)(1) motion.

1

In support of her argument regarding mootness, Rodriguez has separately submitted declarations from herself and the obligor on her bond. Her own declaration alleges facts beyond the scope of the mootness question and the Rule 12 issues. Those additional facts lend support to her separately filed Motion for Discovery, which shows that her claims are not merely plausible but are also substantial, and that good cause exists for granting discovery.

## I.      This Court has subject-matter jurisdiction over the Amended Petition.

"Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) come in two varieties: a facial attack or a factual attack." *Wayside Church v. Van Buren Cnty*, 847 F.3d 812, 816 (6th Cir. 2017) (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012)). A facial attack "questions merely the sufficiency of the pleading," and the district court "takes the allegations of the complaint as true." *Id.* (quoting *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). "A factual attack, on the other hand, raises a factual controversy requiring the district court to 'weigh conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.'" *Id.* (quoting *Gentek Bldg Prods., Inc.*, 491 F.3d at 330). Here, it seems the Respondent has raised a mixture of facial and factual challenges, which Rodriguez will address accordingly.

### A.      Rodriguez has standing to pursue habeas corpus relief.

Although the Respondent seems to make a facial challenge to "standing" (Resp., R.26, PageID# 206), that challenge misses the mark. "[S]tanding does not have to be maintained throughout all stages of litigation. Instead, it is to be determined as of the time the complaint is filed." *Patton v. Fitzhugh*, 131 F.4th 383, 391 (6th Cir. 2025) (quoting *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 524 (6th Cir. 2001)); *see Davis v. FEC*, 554 U.S. 724, 734 (2008) ("[T]he standing requirement remains focused on whether the party invoking

2

jurisdiction had the requisite stake in the outcome when the suit was filed."). And "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007). Likewise, although 28 U.S.C. § 2241 grants habeas jurisdiction only for a petitioner who is in the respondent's "custody," the question "[w]hether a habeas petitioner is 'in custody' is determined at the time of the filing of the petition." *Lawrence v. 48th Dist. Court*, 560 F.3d 475, 479 (6th Cir. 2009) (citing *Northrop v. Trippett*, 265 F.3d 372, 375 n.1 (6th Cir. 2001)); *see Carafas v. LaVallee*, 391 U.S. 234, 238 (1968) (so holding).

Both at the time of filing her petition and voluntarily amending it, Rodriguez was in the "custody" of the Respondent because the Respondent was physically holding her in detention. In her petitions, she sought, *inter alia*, habeas corpus's "typical remedy" for "unlawful executive detention," which is "release" from custody. *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Thus, as of the filing of her petitions, Rodriguez was suffering an "injury-in-fact" (*viz.*, detention) that (1) was "caus[ed]" by the "complained-of" unlawful detention decisions, and (2) could be "redressed by a favorable decision" holding that the detention was unlawful. *Parsons v. U.S. DOJ*, 801 F.3d 701, 710 (6th Cir. 2015) (quoting that test for standing under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Rodriguez's pleadings certainly establish standing.

**B.      Primarily because Rodriguez remains in "custody," the case is not moot.**

Proving a case has been rendered moot, is a "formidable burden." *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Services (TOC), Inc.*, 528 U.S. 167, 190 (2000)). Attempting to satisfy this burden, the Respondent argues that this case is now moot because the immigration court has allowed her to pay a $10,000 bond for release pending her removal proceedings. (Resp., R.26, PageID# 206.) That development does not moot

3

the case primarily because Rodriguez remains in custody within the meaning of § 2241, and, at a minimum, the remedy for her alleged unlawful detention is release from that custody. In the alterative, even if she were no longer in custody, she faces a substantial risk of retaliatory or arbitrary re-detention, and this Court can issue injunctive relief against such action. For this additional reason, the Respondent cannot establish mootness.

### 1. Rodriguez remains in "custody" within the meaning of § 2241.

#### a. The operative facts are largely undisputed.

When adjudicating the motion to dismiss, the Court must accept the facts alleged in the Amended Petition as true and construe it in her favor. *Parsons*, 801 F.3d at 710 (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). If there are material disputes about facts arising since the filing of the Amended Petition that are relevant to the question of subject-matter jurisdiction, the Court must resolve them and could do so by reviewing affidavits or holding a hearing. *See Wayside Church*, 847 F.3d at 817.

The parties agree on important facts. They agree the immigration judge granted her release on $10,000 bond, that the bond was paid, that she was released from the detention center, and that the authorities retained her Colombian passport. (Pet. Not., R.33, PageID# 230; Resp. Not., R.34, PageID# 232.) Plus, the core conditions of release on the immigration bond are set forth in the release documents and in regulations, as follows.

- The release documents establish that Rodriguez must "produce himself/herself to an immigration officer or an immigration judge of the United States, as specified in the 'Notice to Obligor to Deliver Alien," Form I-340, issued by ICE, *upon each and every written request* until removal proceedings in his/her case are finally terminated." (Sluder

4

Dec. Ex. 1, R.37-2, PageID# 262 (emphasis added).) That is, she must report to immigration authorities wherever and whenever they demand by written notice.

- The applicable regulations give immigration authorities the power to revoke her release "at any time" and without cause (although, if revoked without any breach of conditions, the bond money will be returned). 8 C.F.R. § 236.1(c)(9).[1] That is, "[w]hile a probable cause requirement exists for initial immigration arrests, . . . no equivalent benchmark exists where ICE is revoking bond rather than arresting in the first instance. Instead, the decision is completely discretionary." *Bello-Reyes v. Gaynor*, 985 F.3d 696, 700 (9th Cir. 2021) (citing 8 C.F.R. § 236.1(c)(9)).

In short, although Rodriguez presently is not in physical detention, she must report wherever and whenever ICE demands, and, even if she complies fully, ICE can still re-detain her without notice or cause.

The parties disagree whether ICE has retained—in addition to her Colombian passport— her Tennessee REAL ID driver's license, her work permit, and her Colombian identification card (cédula), and whether, at the time of her release, authorities said she would be getting notice in the mail of when to do her first check-in at a local ICE field office. (Pet. Not., R.33, PageID# 230; Resp. Not., R.34, PageID# 232.) Rodriguez is submitting sworn declarations in support of these facts. (Sluder Dec., R.37-2, PageID# 257–64; Rodriguez Dec., R.37-1, PageID# 245-56.)

---

[1] In full, this regulation provides: "When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled."

5

The Respondent has submitted no evidence. For reasons given below, it might not be necessary for the Court to resolve this factual dispute.[2]

> **b.** **The standard conditions of the immigration bond establish that Rodriguez remains in custody.**

The seminal case on the scope of "custody" under 28 U.S.C. § 2241 is *Hensley v. Mun. Court*, 411 U.S. 345 (1973). There, the Supreme Court held that the habeas petitioner was in "custody" when released on a recognizance bond pending service of a sentence. *Id.* at 345. The *Hensley* Court primarily reasoned that the petitioner was in custody because he was obliged to appear in court whenever the court required, which meant that he was "subject to restraints 'not shared by the public generally.'" *Id.* at 351 (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)). For that same reason, the Supreme Court later held the same for a petitioner released on bond pending trial. *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 301 (1984); *accord Malinovsky v. Court of Common Pleas of Lorain County*, 7 F.3d 1263, 1265 (6th Cir. 2003) (holding the same for petitioner "released on personal recognizance bond" pending trial). This line of cases indicates "that personal recognizance bonds categorically suffice as restraints on liberty" amounting to "custody" for habeas purposes. *Lawrence v. 48th Dist. Court*, 560 F.3d 475, 480 (6th Cir. 2009) (finding petitioner "released on personal bond" was in "custody"); *cf. Corridore v. Washington*, 71 F.4th 491, 496 (6th Cir. 2023) (holding that restrictions that are the "collateral consequences" of a criminal conviction, such as those triggered by the sex-offender registry, do not amount to "custody" (quoting *Hautzenroeder v. DeWine*, 887 F.3d 737, 740 (6th Cir. 2018))).

---

[2] Nonetheless, it is noteworthy—because it reflects abusive treatment—that ICE has confiscated from Rodriguez important documents (her driver's license, work permit, and Colombian cédula) without giving her any receipt and without even letting the Assistant United States Attorney handling her case know about that confiscation.

The *Hensley* and *Lydon* principles regarding custody apply equally to habeas petitioners challenging immigration detention or restrictions. *See, e.g., Mustata v. U.S. DOJ*, 179 F.3d 1017, 1021 n.4 (6th Cir. 1999) (finding immigrant habeas petitioners "constructively 'in custody'" because, although they remained at large throughout the litigation, "they faced a final order of deportation"); *Garcia-Echaverria v. United States*, 376 F.3d 507, 510–11 (6th Cir. 2004) (finding "custody" where record showed that ICE intended to take custody of petitioner upon release from state sentence). Following these principles, the Tenth Circuit has held that the fact of being on release on an immigration bond categorically satisfies the "custody" requirement of § 2241. *Pelletier v. United States*, 588 F. App'x 784, 792 (10th Cir. 2014) (holding that requirement satisfied because petitioner "must appear at immigration hearings scheduled at the discretion of the Immigration Court").

Here, the restrictions on Rodriguez's freedom are at least as significant as those on the petitioners in *Hensley* and *Lydon*. For starters, she "must appear at immigration hearings scheduled at the discretion of the Immigration Court." *Pelletier*, 588 F. App'x at 792. That fact alone suffices for a finding of "custody." *Id.* But there is more. She must also appear wherever and whenever ICE demands through a written notice. (Sluder Dec., R.37-2, PageID# 262.) Plus, according to ICE's regulations, ICE can re-detain her "at any time" even if she does nothing wrong. 8 C.F.R. § 236.1(c)(9); *see Bello-Reyes*, 985 F.3d at 701 (explaining that, under its own regulations, ICE's "decision [to revoke release] is completely discretionary"). Thus, Rodriguez certainly remains "subject to restraints 'not shared by the public generally.'" *Hensley*, 411 U.S. at 351 (quoting *Jones*, 371 U.S. at 240). And, even worse, those restraints are volatile: ICE can change them suddenly, demanding her appearance at different places at different times or they can even demand, without cause, that she surrender herself back to ICE custody. *See id.* at 351

(remarking on the somewhat volatile nature of the petitioner's conditions of release). These restrictions most certainly amount to "custody" under binding precedent.

For these reasons, which evidently are not in dispute, Rodriguez remains in "custody" within the meaning of § 2241. But, as mentioned, ICE has also confiscated important documents, which counsel has been trying to recover. (Rodriguez Dec., R.37-1, PageID# 246–48.) Without those documents, she cannot drive a car (because driving without the "immediate possession" of one's license is a crime, Tenn. Code Ann. § 55-50-351(a)), she cannot travel domestically by airplane (because she lacks her passport and REAL ID), and she cannot change jobs (because she cannot show her work permit).[3] Plus, many public buildings—including public schools—require such identification to enter, and so do many financial transactions. Her life will be restricted in countless ways. These are very severe restrictions that the general public does not suffer, and their existence further confirms she remains in "custody." Although it appears these restrictions are not necessary to find she is in custody, the Court should, based on the unrefuted declarations, resolve the factual question in her favor if the Court decides the outcome turns on these restrictions.

### 2. Because Rodriguez remains in custody, the case certainly is not moot.

"The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Mwasaru v. Napolitano*, 619 F.3d 545, 549 (6th Cir. 2010) (quoting *Wedgewood Ltd. P'ship v. Twp. of Liberty*, 610 F.3d 340, 348 (6th Cir. 2010)). And, as mentioned previously, "[t]he typical remedy for [unlawful executive detention] is, of course, release." *Munaf*, 553 U.S. at 693. Thus, because Rodriguez remains in custody within the

---

[3] Counsel believes that the authorization to work remains in effect because no action to rescind it has been taken.

meaning of § 2241, this Court could, at the very least, order her released from that custody—restoring the *status quo ante*—and thereby make a difference to the legal interests of the parties as well as materially affecting Rodriguez's life. The case is not moot.

Additionally, the case is not moot because this Court could also grant the injunctive relief that Rodriguez seeks. *See Carafas*, 391 U.S. at 239 (stating that § 2241 "does not limit the relief that may be granted to discharge of the applicant from physical custody"). To protect her from future retaliatory adverse actions, she asks the Court to enjoin the Respondent from rearresting or re-detaining her absent a material change in circumstances, and this injunction should also include a requirement that the Respondent: (1) give this Court 48 hours' notice before taking such action, with that notice explaining the putative material change in circumstances; and (2) refrain from removing Rodriguez from this District without permission from this Court. *See, e.g., S-M-J v. Bostick*, No. 6:25-cv-01425-MTK, 2025 U.S. Dist. LEXIS 221108, at *11–12, *15 (D. Or. Nov. 10, 2025) (ordering similar injunctive relief for noncitizen whose immigration bond was wrongfully revoked because not revoked by the proper official); *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1009, 1119–20 (E.D. Cal. 2025) (ordering similar injunctive relief for noncitizen wrongfully denied a bond hearing in immigration court). *See generally Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973) ("[T]he writ is available . . . to attack future confinement and obtain future releases"). Injunctive relief of this nature would certainly make a difference to the "legal interests of the party." *Mwasaru*, 619 F.3d at 549. That is clear because, under 8 C.F.R. § 236.1(c)(9), ICE claims for itself the authority to re-detain Rodriguez without cause, and when re-detention under § 236.1(c)(9) might trench on a noncitizen's constitutional rights, the courts can properly prohibit it. *See Bello-Reyes*, 985 F.3d at 701. This injunctive relief is an integral part of the relief Rodriguez seeks, and it is available to her through this habeas petition.

Finally, it bears mention that there is a slightly different analytical route to this same conclusion based on these same facts. "To show that a case is truly moot, a defendant must prove 'no reasonable expectation' remains that it will 'return to its old ways.'" *Fikre*, 601 U.S. at 241 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33 (1953)). Because ICE claims for itself complete discretion to re-detain Rodriguez without cause, *see* 8 C.F.R. § 236.1(c)(9), the Respondent cannot meet its "formidable burden" of proving there is "no reasonable expectation" that ICE will re-detain her. *Fikre*, 601 U.S. at 241. That fact alone dooms the Respondent's mootness argument.

In sum, regardless of the analytical approach, it is clear the relief Rodriguez seeks "would, if granted, make a difference to the legal interests of the parties." *Mwasaru*, 619 F.3d at 549. The case has not been mooted.

### 3. Even if Rodriguez were no longer in custody, the case would not be moot.

Although the Court need not address this issue, Rodriguez will brief it to cover all bases, and to do so she will assume, solely for the sake of argument, that she is no longer in "custody" notwithstanding all the restrictions on her liberty.

Even if that were true, there is no reason—and the Respondent has cited nothing to suggest otherwise—that this Court couldn't issue the injunctive relief she seeks without also ordering her released from custody. The habeas statute directs the court to "dispose of the matter as law and justice require." 28 U.S.C. § 2243. "Its mandate is broad with respect to the relief that may be granted." *Carafas*, 391 U.S. at 239. And "release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008); *see generally Preiser*, 411 U.S. at 499 (stating that habeas corpus may provide an additional jurisdictional ground for challenging the conditions of confinement and seeking

10

relief short of release from custody). Thus, a court can exercise habeas jurisdiction to enjoin the respondent, absent an order granting release from custody. *Clinard v. Lee*, 722 F. App'x 552, 566 (6th Cir. 2018) (refraining from ordering state habeas petitioner released, but rather directing federal district court to provide him a new juvenile transfer hearing); *Campbell v. Henman*, 931 F.2d 1212, 1213, 1215 (7th Cir. 1991) (exercising jurisdiction under § 2241 to address claim that the respondent violated due process by withholding exculpatory evidence from petitioner in disciplinary hearing). This Court could likewise order injunctive relief without ordering release from custody if it were to conclude—contrary to what *Hensley* and its progeny establish—that Rodriguez is not in custody presently.

But, again, the Court need not reach this question. Rodriguez remains in "custody" within the meaning of § 2241 and, moreover, the Respondent has failed to prove there is "no reasonable expectation" that ICE will physically detain her again. *Fikre*, 601 U.S. at 241 (quoting *W.T. Grant Co.*, 345 U.S. at 633). For all these reasons, the case is not moot.

**C.      Section 1252(g) does not strip this Court of jurisdiction over Rodriguez's claims.[4]**

The parties briefed this § 1252(g) issue in their Response and Reply, and the issue was argued at the show cause hearing.[5] (Resp., R.18, PageID# 115–17; Reply, R.20, PageID# 165–

---

[4] Although the Respondent raises this § 1252(g) argument under both Rules 12(b)(1) and 12(b)(6), it appears it is properly raised under Rule 12(b)(1). *See Gicharu v. Carri,* 983 F.3d 13, 16–20 (1st Cir. 2020) (addressing a jurisdiction-stripping bar under 8 U.S.C. § 1252(b)(9) under Rule 12(b)(1) rather than 12(b)(6)).

[5] The tendered brief of *amici* also addresses this issue. (Brief of *Amici*, R.23-1, PageID# 192 ("As ample precedent confirms, however, [Section 1252(g)] does not apply to claims arising from unconstitutional detention, as distinguished from claims arising from actions specified by Section 1252(g)." (citing *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025); *Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 704 (D. Minn. 2025); *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025); *Mahdawi v. Trump*, 781 F. Supp. 3d 214, 226 (D. Vt. 2025)). Rodriguez adopts those same citations to authority in support of her position.

11

67.) Rodriguez will rest on this record to rebut the Respondent's motion as the Respondent seems to say nothing new that might be significant.

The Respondent's only slightly new tactic is to assert that Rodriguez's habeas petition "challenge[s] the United States['] decision to remove her," as if Rodriguez were challenging ICE's decision to "commenc[e] . . . removal proceedings." (Resp., R.26, PageID# 210–11.) But that assertion is a mischaracterization of her petition. As Rodriguez has explained before, she challenges the decisions to subject her to a warrantless arrest and to unlawfully detain her pending removal proceedings, with these actions being "unlawful" because undertaken for retaliatory and punitive purposes. (Reply to Resp., R.20, PageID# 163, 165.) And, as she has also explained before, precedent clearly allows such challenges to immigration-related detention to proceed through habeas corpus notwithstanding § 1252(g). (*Id.* PageID# 165–67.) The Respondent's renewed § 1252(g) argument fails.[6]

## II. The Respondent's Rule 12(b)(6) motion is meritless.

The party moving to dismiss under Rule 12(b)(6) "has the burden of proving that no claim exists." *Total Benefits Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). "All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party." *Id.* (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). Review is restricted to the Amended

---

[6] Moreover, even if Rodriguez were pursuing a claim that ICE unconstitutionally selected her for removal proceedings in violation of the First Amendment, any restriction that § 1252(g) were to place on this Court's habeas jurisdiction would have to give way. That is because stripping jurisdiction in that circumstance would violate the Suspension Clause, U.S. Const. art. I, § 9, cl. 2, since judicial review that comes only after her removal proceedings would not be an "adequate substitute" for habeas review. *INS v. St. Cyr*, 533 U.S. 289, 305 (2001); *see Ragbir v. Homan*, 923 F.3d 53, 73–78 (2d Cir. 2019) (so holding with respect to First Amendment claims that immigration enforcement actions were retaliatory), *cert. granted, remanded, and vacated sub nom. on other grounds, Pham v. Ragbir*, 141 S. Ct. 227 (2020).

12

Petition, its attachments, public records, and documents properly referenced and central to the claims. *Stein v. hhgregg, Inc.*, 873 F.3d 523, 528 (6th Cir. 2017) (quoting *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016)).

The Respondent, in moving to dismiss under Rule 12(b)(6), argues that § 1252(g) strips the Court of jurisdiction and that the case is moot. (Resp., R.26, PageID# 210–11.) Those arguments simply repeat his arguments under Rule 12(b)(1), which Rodriguez has addressed above.

It appears there is nothing else to the Respondent's invocation of Rule 12(b)(6). Although the Respondent summarily asserts that "[t]here is no unlawful detention here" (Resp., R.26, PageID# 210), it seems that assertion pertains to his mootness argument, not to a distinct argument that Rodriguez's claims simply are not cognizable or plausible. In any event, it bears reiterating that her First, Fourth, and Fifth Amendment claims challenging unlawful ICE detentions are precisely the kinds of claims that court have found cognizable and plausible. *See, e.g.*, *Bello-Reyes v. Gaynor*, 985 F.3d 696, 698 (9th Cir. 2021) (reversing dismissal of claim that ICE "unconstitutionally retaliated against him for his speech when revoking his bond and rearresting him"); *Ragbir v. Homan*, 923 F.3d 53, 57 (2d Cir. 2019) (holding the noncitizen petitioner had a "cognizable claim to enjoin the Government from deporting him on the basis of his public speech that was critical of the Government's immigration policies and practices"), *cert. granted, remanded, and vacated sub nom. on other grounds, Pham v. Ragbir*, 141 S. Ct. 227 (2020); *Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 921–22, 935 (W.D. Tex. 2018) (denying summary judgment against noncitizen journalist's claim that the government wrongfully subjected him to immigration detention in retaliation for his exercise of First Amendment rights); *Ercelik v. Hyde*, No. 1:25-CV-11007-AK, 2025 U.S. Dist. LEXIS 88412, at *26–37, *42 (D.

13

Mass. May 8, 2025) (ordering release of noncitizen and temporarily enjoining his rearrest based on claims that ICE's detention of him was punitive and retaliatory in violation of both the First and Fifth Amendments); *Rosada v. Figueroa*, No. CV 25-02157, 2025 U.S. Dist. LEXIS 156344, at *45, *52–53 (D. Ariz. Aug. 11, 2025) (Rep. & Recommendation) (finding that noncitizen's warrantless arrest in violation of 8 U.S.C. § 1357(a)(2) violated the Fourth Amendment and granting release from custody), *adopted by* 2025 U.S. Dist. LEXIS 156336, at *3 (D. Ariz. Aug. 13, 2025).

It also bears noting that she has specifically alleged facts that would satisfy the elements of each claim. For the First Amendment claim, she has plausibly pleaded (1) she "engaged in protected conduct" (*viz.*, her journalism covering ICE operations); (2) that she suffered a material "adverse action" (*viz,* ICE physically detained her and continues to keep her in "custody"); and, (3) there "the adverse action was motivated at least in part by [her] protected conduct" as there was a close temporal relationship and ICE has a recent track record of such retaliation. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (stating elements for First Amendment retaliation). Likewise, the same allegations support her Fifth Amendment claim of a wrongful punitive detention since a retaliatory detention is a wrongful punitive detention. *Ercelik*, 2025 U.S. Dist. LEXIS 88412, at *26–37. Finally, she plausibly pleaded a Fourth Amendment violation because she plausibly asserted the arrest was warrantless and that the requisites of 8 U.S.C. § 1357(a)(2) for a warrantless arrest were not satisfied—indeed, this claim turns on the factual question whether the ICE agents possessed and executed a valid warrant. *See Rosada*, 2025 U.S. Dist. LEXIS 156344, at *45, *52–53. Her claims, as pleaded, are undeniably plausible, at the very minimum.

For these reasons, the Respondent's Rule 12(b)(6) motion lacks merit, and the Court should deny it.[7]

**<u>Conclusion</u>**

The Respondent has failed to prove mootness. Nor is there any basis for dismissing her Amended Petition at this early stage. The Court should deny the Respondent's motion and consider the Petitioner's Motion for Discovery.

Respectfully submitted,

*/s/ Michael C. Holley*
Michael C. Holley
Julio Colby
Spring Miller
TENNESSEE IMMIGRANT & REFUGEE RIGHTS COALITION
3310 Ezell Road
Nashville, TN 37211
Phone: (615) 457-4768
mike@tnimmigrant.org
mholley@holleylegal.com
julio@tnimmigrant.org
spring@tnimmigrant.org

*/s/ Joel Coxander*
Joel Coxander
MIRA Legal
486 Bell Road, Suite B
Nashville, TN 37217

Counsel for Petitioner

---

[7] In her contemporaneously filed Motion for Discovery, Rodriguez describes these claims further based on declarations and records obtained after the filing of her Amended Petition, and she shows they are substantial enough to merit discovery.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2026, I electronically filed this pleading with the U.S. District Court Clerk by using the CM/ECF system to Assistant United States Attorney Mercedes C. Maynor, United States Attorney's Office, 719 Church St., Suite 3300, Nashville TN 37203.

s/ *Michael C. Holley*
Michael C. Holley

16