| | |
|---|---|
| ESTEFANY MARIA RODRIGUEZ FLOREZ,<br><br>  Petitioner,<br><br>  v.<br><br>CHRISTOPHER BULLOCK, Field Office Director of Enforcement and Removal Operations, New Orleans Field Office, Immigration and Customs Enforcement,<br><br>  Respondent. | Case No. 3:26-cv-00247<br>Judge Richardson |

## PETITIONER'S REPLY TO RESPONDENTS' RESPONSE TO MOTION FOR DISCOVERY

Petitioner Estefany Maria Rodriguez Florez (Rodriguez) replies to the Respondent's opposition to her motion for discovery. That opposition boils down to three assertions, each of which is mistaken.

First, the Respondent repeatedly argues that the case is moot, invoking his Rule 12(b) briefing. (Resp. to Mot. Discovery, R.44, PageID# 321–22, 324–25.) Granted, insofar as the record is sufficiently developed, mootness should be addressed before discovery. Rodriguez believes the Respondent is mistaken about mootness, and she does not reiterate her arguments here.

Second, the Respondent asserts that Rodriguez lacks any protection from the First Amendment for her work as a journalist even though she was lawfully admitted into the United States and has lived here for five years building ties to the community, including marrying a U.S. citizen and working pursuant to a lawfully issued work permit. (Resp. to Mot. Discovery, R.44,

1

PageID# 323–24.) The Respondent's assertion conflicts with hornbook law on the question, which is that "[f]reedom of speech and of press is accorded aliens *residing in* this country," *Bridges v. Wixon*, 326 U.S. 135, 148 (1945) (emphasis added), and which is law that Rodriguez has already cited. (Pet. Reply to Resp. to Order to Show Cause, R.20, PageID# 157–58.)[1] Even though this is the third time the Respondent has made this assertion conflicting with hornbook law, and even though a district court is "obligated to follow Supreme Court dicta," *Holt v. City of Battle Creek*, 925 F.3d 905, 910 (6th Cir. 2019), he has never cited a single case in support of his assertion. Indeed, there is no support for it, especially for a person like Rodriguez who was lawfully admitted to the United States, who timely applied for asylum while her visa was valid, and, who, while maintaining contact with immigration authorities, built ties to the community over the course of five years. *See Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 921 (W.D. Tex. 2018) (finding noncitizen journalist's First Amendment retaliation claim survived summary

---

[1] Rodriguez stated:

> First, their proposal about the reach of First Amendment protections directly conflicts with longstanding precedent. *See Bridges v. Wixon*, 326 U.S. 135, 148 (1945) ("Freedom of speech and of press is accorded aliens residing in this country"); *OPAWL v. Yost*, 118 F.4th 770, 776 (6th Cir. 2024) ("The Supreme Court has long held that '[f]reedom of speech and of press is accorded aliens residing in this country'" (quoting *Bridges*, 326 U.S. at 148)); *Rafeedie v. I.N.S.*, 795 F. Supp. 13, 22 (D.D.C. 1992) ("It has long been settled that aliens within the United States enjoy the protection of the First Amendment . . . ."). Indeed, this longstanding rule is necessary partly because the First Amendment protects democratic self-governance as a whole and ensures both the right to speak and the right to listen. *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339 (2010) ("The right of citizens to inquire, to hear, to speak, and to use information to reach a consensus is a precondition to enlightened self-government and a necessary means to protect it."); *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964) ("[S]peech concerning public affairs is more than self-expression; it is the essence of self-government.").

In response, the Respondent *incorrectly* claimed that Rodriguez had misquoted *OPAWL* by supposedly "remov[ing]" part of the sentence she quoted. (Resp. Surreply, R.24, PageID# 195.)

judgment where he was merely paroled[2] into the country rather than lawfully admitted, and where he (like Rodriguez) had an asylum application pending). The First Amendment protects Rodriguez in her lawful work as a journalist in this country.

Moreover, Rodriguez's First Amendment claim parallels her due process claim that rests on largely the same operative facts since the former claim argues her detention is unlawfully retaliatory while the latter claim argues it is unlawfully punitive because retaliatory. The Supreme Court has clearly explained that all people residing within the United States are protected by the Due Process Clause even if their presence is "unlawful"—indeed, even if the person is already "subject to a final order of deportation." *Zadvydas v. Davis*, 533 U.S. 678, 693–94 (2001); *see Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("Aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.") (citing *The Japanese Immigrant Case*, 189 U.S. 86, 100–101 (1903); *Wong Yang Sung v. McGrath*, 339 U.S. 33, 49–50 (1950); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 598 (1953)) ; *Mathews v. Diaz,* 426 U.S. 67, 77 (1976) ("There are literally millions of aliens within the jurisdiction of the United States. The Fifth Amendment . . . protects every one of these persons from deprivation of life, liberty, or property without due process of law . Even one whose presence in this country is unlawful, involuntary or transitory is entitled to that constitutional protection." (citations omitted) (citing *Wong Yang Sung*, 339 U.S. at 48–51; *Wong Wing v. United States*, 163 U.S. 228, 238 (1896))); *Plyler v. Doe,* 457 U.S. 202, 210 (1982) ("'[A]ll persons within the territory of the

---

[2] People merely paroled into the United States are allowed to enter under the fiction that they remain at the border, and consequently their constitutional rights are sometimes less than those enjoyed by people who entered with a lawful admission or with no inspection at all. *See Dep't of Homeland Security v. Thurasissigiam*, 591 U.S. 103, 139 (2020)

3

United States,' including aliens unlawfully present, may invoke the Fifth and Sixth Amendments to challenge actions of the Federal Government . . .." (quoting *Wong Wing*, 163 U.S. at 238)). Like the First Amendment, the Due Process Clause protects Rodriguez, and therefore her discovery motion is well-grounded.

Third, the Respondent asserts Rodriguez is challenging "her conditions of confinement" and so her claims would be cognizable only as a civil rights lawsuit. (Resp. to Mot. Discovery, R.44, PageID# 324–25.) The Respondent is again mistaken. Rodriguez challenges *the fact of* her detention as wrongfully retaliatory or punitive, and she points out that she has been treated abusively in detention to help show a retaliatory or punitive animus.

Finally, three things are conspicuously absent from the Respondent's response: (1) any rational explanation for ICE's decisions to make Rodriguez join immigration court's backlog of 2.3 million asylum applications, to seize her from the street without an arrest warrant, and to detain her and ship her to Louisiana; (2) any meaningful claim that discovery is *not* likely to shed light on the reasons for those decisions; and, (3) any assertion that responding to Rodriguez's discovery requests would be burdensome. The Court should grant those discovery requests.

Respectfully submitted,

/s/ Michael C. Holley
Michael C. Holley
Julio Colby
Spring Miller
TENNESSEE IMMIGRANT & REFUGEE RIGHTS
COALITION
3310 Ezell Road
Nashville, TN 37211
Phone: (615) 457-4768
mike@tnimmigrant.org
mholley@holleylegal.com
julio@tnimmigrant.org
spring@tnimmigrant.org

4

/s/ Joel Coxander
Joel Coxander
MIRA Legal
486 Bell Road, Suite B
Nashville, TN 37217

Counsel for Petitioner


## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2026, I electronically filed this pleading with the U.S. District Court Clerk by using the CM/ECF system to Assistant United States Attorney Mercedes C. Maynor, United States Attorney's Office, 719 Church St., Suite 3300, Nashville TN 37203.

s/ *Michael C. Holley*
MICHAEL C. HOLLEY